Kathryn Brack Morrow (NM Bar No. 24739)
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
kathryn@buddfalen.com

*Attorney for Plaintiffs/Petitioners*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| LINN and TRECIAFAYE BLANCETT, | ) | |
| | ) | |
| Plaintiffs/Petitioners, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | **COMPLAINT TO QUIET** |
| OF THE INTERIOR; KEN SALAZAR, | ) | **TITLE AND TO PETITION** |
| in his official capacity as Secretary of | ) | **FOR REVIEW OF AGENCY** |
| the Department of the Interior; | ) | **ACTION** |
| UNITED STATES BUREAU OF LAND | ) | |
| MANAGEMENT, an agency of the | ) | |
| United States Department of Interior; | ) | |
| BOB ABBEY, in his official capacity | ) | |
| as Director of the Bureau of Land | ) | |
| Management; LINDA RUNDELL, | ) | |
| in her official capacity as State Director | ) | |
| for the New Mexico State Bureau of | ) | |
| Land Management; JESSE J. JUEN, in | ) | |
| his official capacity as Associate State | ) | |
| Director for the New Mexico State | ) | |
| Bureau of Land Management; and | ) | |
| STEVE HENKE, in his official capacity | ) | |
| as the Field Manager for the | ) | |
| Farmington Field Office of the New | ) | |
| Mexico State Bureau of Land | ) | |
| Management, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

COME NOW, Plaintiffs/Petitioners Linn and Treciafaye Blancett (hereinafter referred to as "Petitioners" or "Blancetts"), by and through their undersigned counsel, and hereby bring this action under the Quiet Title Act, 28 U.S.C. § 1346(f) and 2409a, to quiet title in the Petitioners to the real property at interest herein against all adverse real estate claims by Defendants/Respondents, and petition the Court for review of the final decision of the United States Department of Interior, Interior Board of Land Appeals (hereinafter referred to as "IBLA"), dated December 29, 2009, which affirms the Bureau of Land Management (hereinafter referred to as "BLM"), New Mexico State Office's final decision, dated August 18, 2006, to reject Petitioners' objection to a dependent survey. As grounds for this petition, Petitioners state as follows:

## JURISDICTION AND VENUE

1.   The Petitioners bring this civil action to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory authority; and unsupported by substantial evidence, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

2.   Further, the Petitioners bring this civil action, pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, to quiet their title to the real property at issue herein against all adverse real estate claims made by the BLM.

3.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the APA, 5 U.S.C. §§ 701 et seq., the Bona Fide Rights Act, 43 U.S.C. § 772, and the Quiet Title Act,

1

28 U.S.C. § 2409a, and because Petitioners request relief in the forms of declaratory judgment and injunctive relief.

4. The federal Respondents have consented to a waiver of sovereign immunity in civil actions, pursuant to 28 U.S.C. §§ 1346(f) and 2409a, to adjudicate disputes regarding real property in which the United States claims an interest in the district courts for the United States.

5. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1346(a)(2), since the Respondent in this action is the United States of America.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e) and 1402(a)(1), in that the actions complained of herein affect public lands owned and managed by the United States Department of Interior, Bureau of Land Management, including those lands located in the State of New Mexico. Moreover, a substantial part of the events or omissions giving rise to the claims occurred in the District of New Mexico, and a substantial part of property that is the subject of the action is situated in the District of New Mexico.

7. An actual, justiciable controversy now exists between the parties hereto, regarding the subject matter hereof, as to all matters for which the Petitioners seek declaratory and injunctive relief; therefore, this Court may declare the rights and other legal relations of the parties in this action under 28 U.S.C. §§ 2201 and 2202.

8.  Finally, Petitioners exhausted all administrative remedies before the United States Department of Interior and the action complained of herein constitutes final agency action for purposes of judicial review. 5 U.S.C. § 704.

## PARTIES

9.  Petitioners Linn and Treciafaye Blancett are residents of San Juan County, New Mexico.  The Blancetts own real property located in the State of New Mexico, the boundaries of which were based on an 1880 cadastral survey performed by the federal government.  Since the 1970s, Petitioners have utilized the property for a successful farming and ranching operation and have built a home, a bunkhouse, roads, and other ranch improvements and have irrigated the crop and farm lands–all of which has been put in jeopardy by the BLM's reliance on an erroneous dependent resurvey, which purports to change the boundary of their land to run straight through the middle of their house.

10. Respondent Ken Salazar is the Secretary of the United States Department of the Interior, and is sued in his official capacity.  As Secretary, he is responsible for the direction and supervision of all operations and activities in the Department of the Interior, including those taken by the United States BLM.  In that capacity, the Respondent and his agents and employees are charged with implementing the statutory and regulatory requirements relating to use of the federal public lands within the State of New Mexico.

11.   Respondent United States BLM is an agency of the United States Department of Interior charged with the management of the federal public lands at issue herein in accordance and compliance with federal law.

12.   Respondent Bob Abbey is Director of the United States BLM and is sued in his official capacity.  As Director, Respondent Abbey is responsible for the direction and supervision of all operations and activities in the BLM, including those in the State of New Mexico.  In that capacity, the Respondent  and his agents and employees are charged with implementing the statutory and regulatory requirements relating to use of the public lands.

13.   Respondent Linda Rundell is the New Mexico State Director of the BLM and is sued in her official capacity.  As State Director, Respondent Rundell is responsible for the direction and supervision of all operations and activities of the BLM in the State of New Mexico.  In that capacity, the Respondent and her agents and employees are charged with implementing the statutory and regulatory requirements relating to use of the public lands.

14.   Respondent Jesse J. Juen is the Associate State Director of the BLM in New Mexico and is sued in his official capacity.  As Associate State Director, Respondent Juen is responsible for the direction and supervision of all operations and activities of the BLM in the State of New Mexico, including the District Offices.  In that capacity, the Respondent and his agents and employees are charged with implementing the statutory and regulatory requirements relating to use of the public lands.

4

15.     Respondent Steve Henke is the Field Manager for the Farmington Field Office of

the BLM and is sued in his official capacity.  As Field Manager, Respondent

Henke is responsible for the direction and supervision of all operations and

activities of the Farmington Field Office.  In that capacity, the Respondent and

his agents and employees are charged with implementing the statutory and

regulatory requirements relating to use of the public lands.

### STANDARD OF REVIEW

16.     The APA prohibits agency actions, findings, and conclusions found to be

"arbitrary, capricious, and abuse of discretion, or otherwise not in accordance

with law," 5 U.S.C. § 706(2)(A), or are "unsupported by substantial evidence," 5

U.S.C. § 706(2)(E).  See Olenhouse v. Commodity Credit Corp., 42 F.3d 1560,

1573-1577 (10th Cir. 1994).

17.     In determining whether an agency acted in an arbitrary and capricious manner, a

court must ensure that the agency's decision was based on a consideration of the

relevant factors and examine whether there has been a clear error of judgement.

Friends of the Bow v. Thompson, 124 F.3d 1210, 1215 (10th Cir. 1997) (citing

Citizens to Preserve Overton Park, Inc v. Volpe, 401 U.S. 402, 416 (1971)).

18.     As the Tenth Circuit Court of Appeals elucidated:

> Generally an agency decision will be considered arbitrary and
> capricious if the agency had relied on factors which Congress had not
> intended it to consider, entirely failed to consider an important aspect
> of the problem, offered an explanation for its decision that runs
> counter to the evidence before the agency, or is so implausible that it
> could not be ascribed to a difference in view or the product of agency
> expertise.

Friends of the Bow, 124 F.3d at 1215 (citing Motor Vehicle Mfrs. Ass'n v. State Farm
Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)); see also Olenhouse, 42 F.3d at 1574.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

*The 1880 and 1969 Cadastral Surveys*

19.    A cadastral survey "creates, marks, defines, retraces or reestablishes the
boundaries and subdivisions of the public land of the United States."  Bureau of
Land Management, Glossaries of BLM Surveying and Mapping Terms 10,
available at http://www.blm.gov/cadastral/Glossary/cadterms/glossc.pdf.

20.    In 1880, the United States General Land Office undertook a public lands
cadastral survey of the lands at issue ("1880 Survey").  The 1880 Survey was
performed by R.L. Powel.  The survey plat was approved in 1881.  A plat is the
representational drawing of "the particular area included in a survey, such as a
township, private land claim or mineral claim, and the lines surveyed,
established, retraced or resurveyed, showing the direction and length of each
such line; the relation to the adjoining official surveys; the boundaries,
descriptions, and area of each parcel of land subdivided; and, as nearly as may be
practicable, a representation of the relief and improvements within the limits of
the survey."  Bureau of Land Management, Glossaries of BLM Surveying and
Mapping Terms 49,  available at
http://www.blm.gov/cadastral/Glossary/cadterms/glossp.pdf.

21.    Based upon the 1880 Survey, in 1888 Petitioners' predecessors-in-title were
granted a homestead patent on 160 acres including the land in question, and in

6

1918, Petitioners' predecessors-in-title were granted a Desert Land Entry patent for an additional 80 acres.  Petitioners' land has been farmed continuously since the 1890s with water adjudicated to it pursuant to New Mexico state law as early as 1904.

22.     Petitioners have owned, occupied, and operated the Blancett Ranches since the 1970s.  In 1971, Petitioners built their home on this property and have been living in it continually since 1976.  The part of the Petitioner's ranch at issue includes irrigated farmland and this homesite–including Petitioners' house, bunkhouse, roads, and other improvements–located in Section 22 of Township 32 North, Range 10 West, New Mexico Principal Meridian, New Mexico.

23.     In 1969, the Bureau of Land Management's ("BLM") Cadastral Survey Office initiated a dependent resurvey of portions of the subdivision of Sections 10 and 22, Township 32 North, Range 10 West, New Mexico Principal Meridian, New Mexico, and the subdivisional lines, in order to locate various boundaries between public and private land within the township ("1969 Resurvey").  See 43 U.S.C. § 772 ("The Secretary of the Interior may . . . in his discretion cause to be made. . . such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of public lands remaining undisposed of.")  The 1969 Resurvey was conducted by Duane E. Olsen, and was completed on July 10, 1969.  The plat representing this dependent resurvey was accepted by the BLM on August 28, 1972.

24.    Neither a copy of the 1969 Resurvey nor a copy of the 1972 resurvey plat was ever

provided to Petitioners.

25.     The purpose of a dependent resurvey is:

> *. . . to accomplish a restoration of what purports to be the original conditions* according to the record, based, first upon identified existing corners of the original survey and other recognized and acceptable points of control, and second upon the restoration of missing corners by proportionate measurement in harmony with the record of the original survey.  This type of resurvey is applicable to those cases showing fairly concordant relation between conditions on the ground and the record of the original survey.  *Titles, areas, and descriptions should remain absolutely unchanged in the typical dependent resurvey.*

Manual of Instructions for the Surveying of Public Lands in the United States, §

400 (1947) (emphasis added).

26.    In conducting the 1969 Resurvey, Olsen was required to follow all procedures and

protocols in the 1947 "Manual of Instructions for the Surveying of Public Lands in

the United States" ("1947 Manual")–the then-current edition of the manual.

27.    The 1947 Manual required Olsen to "reestablish[] or reconstruct[] the land

boundaries and subdivisions by the rerunning and remarking of the lines that

were represented in the field-note records and on the plat of the previous official

survey." 1947 Manual, § 387 at 309.

28.    Original lines are reestablished in a dependent survey by recovering or restoring

the original corners.  A "corner" of a public land survey is "a point on the surface

of the earth, determined by the surveying process, which defines an extremity on

a boundary of the public lands." Bureau of Land Management, Glossaries of BLM

8

Surveying and Mapping Terms 15,  available at

http://www.blm.gov/cadastral/Glossary/cadterms/glossc.pdf.  Corners

determine the boundaries of the various subdivisions which are represented on

the official plat. A corner can be classified as recovered, obliterated or lost.

29.     An obliterated corner is "one at whose point there are no remaining traces of the

monument or its accessories, but whose location has been perpetuated, or the

point for which may be recovered beyond reasonable doubt, by the acts and

testimony of the interested landowners, competent surveyors, or other qualified

local authorities, or witnesses, or by some acceptable record evidence." 1947

Manual, § 355 at 285.

30.     A lost corner is one that cannot be determined "either from traces of the original

marks or from acceptable evidence or testimony that bears upon the original

position, and whose location can be restored only by reference to one or more

interdependent corners." 1947 Manual, § 360 at 289.  However, a corner will not

be considered lost "if its position can be recovered satisfactorily by means of the

testimony and acts of witnesses having positive knowledge of the precise location

of the original monument." 1947 Manual, § 355 at 285.

31.     After finding no evidence (i.e., a monument) of the disputed corner and failing to

consider additional available collateral (i.e., additional surveys and maps) and

testimonial evidence to protect bona fide rights, Olsen classified the disputed

quarter-section corner between Sections 15 and 22 as lost.

32. Consequently, Olsen then determined the disputed quarter-section corner by proportionate measurement, place the corner 1.84 chains (approximately 121 feet) west of the placement of the corner in the original 1880 Survey. See 1947 Manual, §§ 30, 361 at 289 (only after failing to uncover any acceptable physical, testimonial, or collateral evidence for locating a missing corner through an exhaustive search and full inquiry may the surveyor apply the rule of proportionate measurement).  For reference, a chain is "the unit of length prescribed by law for the survey of the public lands of the United States. The chain is equivalent to 66 feet . . . ."  Bureau of Land Management, Glossaries of BLM Surveying and Mapping Terms 11,  available at http://www.blm.gov/cadastral/Glossary/cadterms/glossc.pdf.

33. In addition, while performing the reestablishment of the disputed quarter-section corner in the 1969 Resurvey, Olsen misapplied the rule of proportionate measurement by failing to locate Powel's measurement blunder in chaining up the high mesa where it occurred in the original 1880 Survey.  See 1947 Manual, § 363 at 290 (surveyor must place original measurement "blunders" where they properly belong).

34. The difference between the 1969 Resurvey placement of the disputed quarter-section corner and the original 1880 Survey corner is approximately nine acres. This nine acres includes cultivated, irrigated land that contains various improvements made by Petitioners, including their home.

35. Thus, the movement of the boundary line by the BLM in reliance on the 1969 Resurvey placement of the disputed quarter-section corner will result in one-half of Petitioners' home being on the "wrong side" of the boundary line–on BLM land.

36. In addition to negatively impacting Petitioners' bona fide rights as to this nine acres, the 1969 Resurvey placement of the disputed quarter-section corner between Sections 15 and 22 imposes similar burdens a number of other bona fide rights of neighboring land owners. These landowners have expended great sums of money and time in building homes, ranches, irrigated crop land, and other various improvements on their lands. Like the Petitioners, these neighboring landowners' bona fide rights are put in jeopardy by the BLM's decision to move the boundary line in reliance on the erroneous 1969 Resurvey.

*The BLM Fencing Initiative*

37. On January 10, 2000, BLM notified Petitioners by letter that it intended to fence the boundaries of certain public lands under the southwestern Willow Flycatcher Habitat Management Plan–lands presumably adjacent to Petitioners' property–based upon a 1999 dependent resurvey ("1999 Resurvey") that retraced the 1969 Resurvey.

38. This letter was the first notice to Petitioners of the 1969 Resurvey.

39. Petitioners responded to the BLM's fencing notification letter on January 12, 2000, stating: "We have no concerns with the accuracy of the survey. We will not protest the survey. . . . We support the fencing *adjacent* to our private and lease

11

land." Letter from Blancett Trust to Joel Farrell (Jan. 12, 2000) (emphasis added). In this letter, Petitioners' were referring to fences that were to be constructed on Areas of Environmental Concern within the BLM public land and *not* on Petitioners' private lands.

40. On June 2, 2005, Petitioners received a Notice of Trespass letter from Joel Farrell, Assistant Field Manager for the BLM New Mexico State, Farmington Field Office, notifying them that pursuant to a "new" survey (i.e., the 1969 Resurvey), the BLM had determined that the boundary between the BLM lands and Petitioners' private property now ran straight through the middle of their house.

41. The Notice of Trespass letter informed Petitioners that a portion of their house, a bunkhouse, other ranch improvements, road, and irrigated crop and farm lands were in trespass, claiming that Petitioners were allegedly using BLM lands without authorization. The BLM ordered Petitioners to vacate public lands or risk "trespass penalties and a citation for your appearance before a designated United States magistrate."

42. Based on the BLM's allegation of trespass, Petitioners hired Scott Andrae in 2005 to perform an private boundary survey on Petitioners' lands of record ("Andrae Survey"). Under New Mexico state law, Andrae was required to use the 1969 and 1999 monuments in performing his survey, regardless of the accuracy of their locations.

43.   A monument is a physical structure that marks the location of a corner.  See
      Bureau of Land Management, Glossaries of BLM Surveying and Mapping Terms
      41,  available at http://www.blm.gov/cadastral/Glossary/cadterms/glossm.pdf (A
      monument is "a physical structure, such as an iron post, marked stone or tree in
      place, which marks the location of a corner point established by a Cadastral
      Survey.")

44.   Thus, by having to use the monuments established in the 1969 and 1999
      Resurveys, the Andrae Survey shows discrepancies between Petitioners'
      occupation based on the monuments in the 1880 Survey and the location of the
      monuments in these later resurveys.

45.   On May 22, 2006, Jesse J. Juen, Associate State Director for the BLM
      Farmington Field Office notified Petitioners of its intent to fence Petitioners'
      property along the 1969 Resurvey property line, which would run through the
      middle of Petitioners' house that was built in 1971, relying upon the boundaries
      established by the 1880 Survey.

*The Petitioners' Administrative Appeal*

46.   On June 2, 2006, Petitioners formally protested BLM's fencing initiative and the
      1969 Resurvey and 1999 Resurvey.

47.   In their Statement of Reasons and Supplemental Statements of Reasons
      accompanying this protest, Petitioners submitted additional collateral evidence
      that the BLM failed to consider in the 1969 and 1999 Resurveys, as required by
      the applicable Manual of Instructions for the Surveying of Public Lands in the

United States in effect at the time. Consideration of this evidence would have properly classified and located the disputed quarter-section corner.  For example, this collateral evidence includes:

    a.    1900 Eastside (Odenkirk) Ditch Survey Map;

    b.    1880 Homestead Patent and 1918 Desert Land Entry Patent and map;

    c.    Several hand-drawn maps by Petitioners' predecessors-in-title;

    d.    1938 State Hydrographic Survey map; and

    e.    Testimony of a neighboring landowner.

48.    The New Mexico State BLM Director, Linda Rundell, considered Petitioners' Statement of Reasons in protest and determined that the 1969 Resurvey was conducted in accordance with the 1947 Manual, and therefore did not constitute a gross error.  Thus, in its final decision dated August 18, 2006, the New Mexico State BLM denied Petitioners' protest to the 1969 and 1999 cadastral resurveys and BLM's fencing initiative.

49.    Petitioners promptly and properly filed a Notice of Appeal, Statement of Reasons, and Request for Stay with the Interior Board of Land Appeals ("IBLA") on September 15, 2006.

50.    The IBLA granted Petitioners' Request for Stay of the building of the fence, and encouraged the parties to settle the dispute.

51.    After unsuccessful settlement negotiations, the IBLA issued a final decision on December 29, 2009, affirming the final decision of the BLM and denying

Petitioners' protest of the 1969 and 1999 Resurveys and BLM fencing initiative. However, Administrative Judge Jackson wrote the dissenting opinion which concluded that the 1969 Resurvey constituted gross error since Petitioners brought forth sufficient evidence to show Olsen's blatant disregard of available collateral evidence in restoring the disputed quarter-section corner and improper application of the rule of proportionate measurement in conducting the 1969 Resurvey--in clear neglect of the procedures from the 1947 Manual--and Olsen's failure to protect the bona fide rights of Petitioners.

### FIRST CAUSE OF ACTION:
### 1969 DEPENDANT RESURVEY WAS PERFORMED IN GROSS ERROR, IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

52.   Petitioners assert and allege all preceding paragraphs as if fully set forth herein.

53.   A failure to conform the resurvey to the requirements of the BLM "Manual of Instructions for the Surveying of Public Lands in the United States" in use at the time of the resurvey constitutes gross error, and the dependent resurvey must be cancelled. Domenico A. Tussio, 37 IBLA 132, 133 (1978).

54.   Parties objecting to a resurvey after the filing of an official plat must establish that the resurvey was "fraudulent or grossly erroneous." Peter Paul Groth, 99 IBLA 104, 111 (1987).

55.   In conducting the 1969 Resurvey, the BLM failed to follow the procedures in the 1947 Manual, including failing to ascertain and consider all available collateral evidence of the location of the corner (such as topographical calls, additional relevant surveys and plats, testimony of neighboring landowners, and other

15

historical documentation that demonstrates the proper location of the disputed quarter-section corner) and failing to properly retrace the blunder from the original 1880 Survey.

56.  Consequently, BLM improperly classified the disputed quarter-section corner between Sections 15 and 22 as lost rather than obliterated when it failed to consider the readily-available collateral evidence in locating the disputed quarter-section corner, in violation of rules of procedure of the 1947 Manual.

57.  Additionally, BLM misapplied the rule of proportionate measure to reestablish the disputed quarter-section corner when it failed to properly locate the measurement blunder of the 1880 Survey, in violation of the rules of procedure of the 1947 Manual.

58.  Therefore, because the 1969 Resurvey failed to follow the 1947 Manual, it was performed in gross error and is arbitrary, capricious, an abuse of discretion, and is  not otherwise in accordance with the law in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

### SECOND CAUSE OF ACTION:
### 1969 DEPENDANT RESURVEY VIOLATES BONA FIDE RIGHTS ACT

59.  Petitioners assert and allege all preceding paragraphs as if fully set forth herein.

60.  Under the Bona Fide Rights Act, "no. . . resurvey or retracement may be executed so as to impair the bona fide rights or claims of claimant, entryman or owner of lands affected by such resurvey or retracement." 43 U.S.C. § 772; see United

16

States v. State Investment Co., 264 U.S. 206, 212 (1924); see also Lane v. Darlington, 249 U. S. 331, 333 (1919); 1947 Manual, § 392 at 312.

61. ". . .[A] dependent resurvey in which data of the official plat of survey of the township and its field notes are ignored and the changing of corners established by the original survey to the prejudice of bona fide property rights acquired in good faith in reliance upon the integrity of the original survey" constitutes gross error and must be set aside.  Tussio, 27 IBLA at 133 (citing Frank Lujan, 30 IBLA 95 (1977)).

62. A bona fide right under the Bona Fide Rights Act is based upon a good faith reliance on the evidence in the original survey.  See Tracy Rylee, 174 IBLA 239, 251 (2008); see also United States v. Reimann, 504 F.2d 135, 139 (10th Cir. 1974) ("But once patent has issued, the rights of patentees are fixed and the government has no power to interfere with these rights, as by a corrective resurvey." (citations omitted)).

63. Petitioners' predecessors-in-title were granted land patents based upon the evidence of boundary lines in the original 1880 Survey and plat.  Petitioners relied on the boundaries set forth by the 1888 Homestead patent and a 1918 Desert Land Entry patent when placing improvements upon their property located within Section 22 of Township 32 North, Range 10 West, New Mexico Principal Meridian, New Mexico.

64. The 1969 Resurvey failed to properly follow the 1947 Manual and consider collateral evidence, resulting in the erroneous classification of the disputed quarter-section corner between Sections 15 and 22 as lost.

65. Because BLM classified this corner as lost and not obliterated, and because BLM used the rule of proportionality to determine the new location of the disputed quarter-section corner, the 1969 Resurvey placed the corner 1.84 chains west of the placement in the original 1880 Survey; consequently, the new section line boundary between Sections 15 and 22 runs directly through the middle of Petitioners' house.

66. The difference in the placement of the disputed quarter-section corner and the corresponding boundary line between the original 1880 Survey and the 1969 Resurvey is approximately nine acres.  This nine acres includes not only half of Petitioners' home, but also a bunkhouse, other ranch improvements, roads, and irrigated crop and farm lands.

67. Thus, the 1969 Resurvey failed to protect bona fide rights of Petitioners in violation of the Bona Fide Rights Act, 43 U.S.C. § 772, constitutes gross error for failing to follow the requirements of the 1947 Manual, and is arbitrary, capricious, an abuse of discretion, and is not otherwise in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

### THIRD CAUSE OF ACTION: 1999 RESURVEY CONSTITUTES GROSS ERROR, AND IS IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

68. Petitioners assert and allege all preceding paragraphs as if fully set forth herein.

69. As stated above a dependent resurvey that fails to conform to the then-current Survey Manual constitutes gross error and must be set aside. <u>Tussio</u>, 37 IBLA at 133.

70. In 1999, the BLM commissioned a resurvey of the boundary lines between Sections 15 and 22 of Township 32 North, Range 10 West, New Mexico Principal Meridian, New Mexico.

71. In conducting the 1999 Resurvey, the BLM retraced the lines and corners as determined by the 1969 Resurvey. The 1969 Resurvey constitutes gross error because it failed to conform with the 1947 Manual.

72. In reliance on the 1999 Resurvey, the BLM issued a Notice of Trespass to Petitioners and issued a fencing initiative to place a boundary fence through Petitioners' private land. The fencing initiative impacts nine acres of Petitioners' private property, including numerous improvements place on the land by Petitioners in reliance of the original 1880 Survey.

73. Because the 1969 Resurvey–on which the 1999 Resurvey was based–constitutes gross error and must be cancelled, the 1999 Resurvey also constitutes gross error, and is arbitrary, capricious, an abuse of discretion, and is not otherwise in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

### FOURTH CAUSE OF ACTION:
### NOTICE OF TRESPASS AND FENCING INITIATIVE VIOLATE
### THE ADMINISTRATIVE PROCEDURE ACT

74. Petitioners assert and allege all preceding paragraphs as if fully set forth herein.

75.   In 1999, the BLM commissioned a resurvey of the boundary lines between Sections 15 and 22 of Township 32 North, Range 10 West, New Mexico Principal Meridian, New Mexico in order to ascertain the boundaries of certain public lands managed by the BLM under the southwestern Willow Flycatcher Habitat Management Plan ("HMP").  This dependent resurvey traced the corners and lines of the 1969 Resurvey.

76.   In 2000, BLM notified Petitioners that it intended to fence the boundaries of the lands managed under the HMP–lands presumably adjacent to Petitioners' property–based upon the 1999 Resurvey.

77.   In 2005, Petitioners received a Notice of Trespass notifying them that pursuant to the resurveys, the BLM had determined that the boundary between the BLM lands and Petitioners' private property now ran straight through the middle of their house. The letter informed Petitioners that a portion of their house, a bunkhouse, other ranch improvements, road, and irrigated crop and farm lands were in trespass, claiming that Petitioners were allegedly using BLM lands without authorization.

78.   Finally, in 2006, the BLM again notified Petitioners of its intent to fence Petitioners' property along the 1969 Resurvey property line in accordance with the HMP.

79.   Because the 1999 Resurvey constitutes gross error insofar as it retraced the 1969 Resurvey–which failed to follow the 1947 Manual–and must be set aside, the subsequent Notice of Trespass and fencing initiative by the BLM are therefore

20

arbitrary, capricious, an abuse of discretion, and are not otherwise in accordance with the law in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

### FIFTH CAUSE OF ACTION:
### ACTION TO QUIET TITLE

80.  Petitioners assert and allege all preceding paragraphs as if fully set forth herein.

81.  The Petitioners bring this civil action, pursuant to the Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a, to quiet their title to the real property at issue, as set forth herein, against all adverse real estate claims made by the BLM.

82.  The nature of the right, title or interest, which the Petitioners claim in the real property at issue was acquired pursuant to the homestead patent issued to Petitioners' predecessors-in-title, which was based on the original 1880 Survey performed by Powel.

83.  The nature of the right, title, or interest, which the BLM claims in the real property herein lies in the fact that the BLM owns and manages the public lands which border Petitioners' lands at issue herein.

84.  Based on the 1969 dependent resurvey, the BLM claims that the 1969 and subsequent 1999 Resurveys establishes a new boundary between the public lands owned and managed by the BLM and the private lands owned by the Petitioners. BLM claims title to this area of approximately nine acres between the original 1880 Survey boundary line and the new 1969 Resurvey boundary line—the line that runs straight through Petitioners' home.

21

85.   If title to the disputed real property at issue was quieted in the Petitioners, they would not be liable for any trespass to the United States for the occupation and operation of those nine acres.  At the same time, the BLM may not preclude or unreasonably interfere with the reasonable exercise of the rights of those who hold valid title to lands abutting public lands owned by the BLM.

86.   Furthermore, the Petitioners bring this action in order to enjoy unfettered use and maintenance of the disputed section of real property without fear of administrative, civil, or criminal liability for any alleged unauthorized activity or trespass.

87.   Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that Petitioners have valid title to the disputed real property at issue herein, and to ensure access at all times for the occupation, operation and maintenance of that property, without BLM interference.

### REQUEST FOR RELIEF

WHEREFORE, on the foregoing basis, Petitioners respectfully request that the Court grant the following relief:

a.   A declaration that the 1969 Resurvey constitutes gross error because the BLM failed to follow the 1947 Manual in conducting the survey.

b.   A declaration that the 1999 Resurvey constitutes gross error because the BLM relied upon the grossly erroneous 1969 Resurvey in conducting the 1999 Resurvey.

c.      A declaration that the BLM violated the Bona Fide Rights Act, 43 U.S.C. §

772, and failed to protect Petitioners' bona fide rights when it performed,

and subsequently approved the plat of, the 1969 Resurvey.

d.      A declaration that the Notice of Trespass issued to Petitioners by the BLM

and the BLM fencing initiative to fence through Petitioners' private land

are arbitrary, capricious, abuse of discretion, and/or otherwise not in

accordance with the law.

e.      A preliminary and/or permanent injunction setting aside and cancelling

the 1969 and 1999 Resurveys.

f.      A preliminary and/or permanent injunction prohibiting the BLM from

fencing the boundary between Sections 15 and 22, Township 32 North,

Range 10 West, New Mexico Principal Meridian, New Mexico, insofar as

that boundary is based upon the 1969 and 1999 Resurveys.

g.      A declaratory judgment quieting title in the Petitioners for the real

property at issue herein, establishing their estate in fee simple in and to

the real estate against the adverse claims of the Respondents, and each of

them, and everyone claiming by, through or under them, and that the

Respondents, and each of them, and everyone claiming by, through or

under them, be barred and forever estopped from having or reclaiming

any lien upon, or right, title or interest in or to the real estate adverse to

the estate of the Petitioners, and that the title of the Petitioners thereto in

fee simple be forever quieted and set at rest;

23

h.   A declaratory judgment that the Plaintiff is not liable for any trespass to the United States for the occupation, operation and maintenance of the disputed section of real property at issue herein, and that the BLM may not preclude or unreasonably interfere with the reasonable exercise of the rights of those who hold valid title to lands which border the BLM lands;

i.   An award of costs and attorneys fees.

j.   Any other relief this Court deems just and reasonable.

RESPECTFULLY SUBMITTED this 19th day of March, 2010.


/s/Kathryn Brack Morrow
Kathryn Brack Morrow
BUDD−FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632−5105 Telephone
(307) 637−3891 Facsimile

*Attorney for Plaintiffs/Petitioners*